In the United States District Court
For the District of Minnesota

Timothy R. Majchrzak

vs.

United States of America
Respondent

Criminal No. 06-cr-405 [1] [JMR]JJG

PJS
RECEIVED
BY MAIL
JUN 0 5 2012
CLERK, US DISTRICT COURT
MINNEAPOLIS, MN

## MEMORANDUM OF LAW IN SUPPORT

Prior to Bond a private citizen party lacked standing to challenge a Tenth Amendment intrusion.

    Timothy Majchrzak's case is a product of the federal government's belief that it can seize private citizens rights under the guise of federal criminal statutes at the expense of the United States Constitution. This is despite the instructions from the Supreme Court holding: "Our cases long have recognized that the constitution embodies a promise that a certain private sphere of individual liberty will be kept largely beyond the reach of government." Thornburgh v. American College of Obstetricians & Gynecologists 476 U.S. 747, 772 [1996]

    Immune from dispute the federal government, in this case, is aware that the state of Minnesota is capable of prosecuting Majchrzak's conduct. Knowing this, without even a pregnant pause, our federal government ignored the constitution and seized Majchrzak's liberty for almost a decade.

    The federal government rests it's assertions on 18 U.S.C. 922 [g] [1]. Whereas Congress presumed that the constitution permitted the exclusive prosecution of the state of citizens despite state legislation to prosecute.

    The Sixth Amendment, while not in specific text, promises that Majchrzak will not be deprived an attorney with the professionalism to advise him of the collateral consequences of accepting that the federal government has not, or would not intrude upon Minnesota's sovereignty.

    Majchrzak readily acknowledges that the Ninth Amendment does not constitute an independent source of rights protected from infringement by the federal government. Rather, Majchrzak believes



SCANNED
JUN 0 5 2012

the Ninth Amendment shows a belief of the constitution's authors, fundamental rights exist that are not expressly enumerated in the first Eight Amendments and intend that the list of rights included there not be deemed exhaustive.

In other words, to interpret the constitution in a manner that might alleviate rights not expressly visited in the other amendments is forbidden by the Ninth Amendment.

## BOND ESTABLISHES THAT MAJCHRZAK HAS STANDING TO ASSERT HIS BIFURCATED ARGUMENT TO CONGRESS' ENUMERATED POWERS AND THE TENTH AMENDMENT

Timothy R. Majchrzak affirms to be true and states under penalty of perjury as follows:

This Prosecution is beyond the outer limits of the five-crimes allowed by Congress. It is also beyond the outer limits of Congress' enumerated powers and cannot be saved by the insertion of the commerce clause or the necessity clause.

## RIPENESS AND EQUITABLE TOLLING DOCTRINES

The question of ripeness turns on the "fitness of the issues for judicial decision" and "the hardship to Majchrzak of withholding court consideration". Pac. Gas & Elec., 103 S Ct. at 1720 [1983]

Prior to Bond Majchrzak's claim was not fit for judicial decision. Eighth circuit precedent, as a matter of fact and law precluded Majchrzak from an opportunity to even attempt to raise the claim. Majchrzak's claim, simply was premature for review and without merit prior to the expiration of the one year statute of limitations.

A claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all". Texas V. United States, 523 U.S. 296300: 118 s Ct, 1257 [1998]

There was no possible way for Majchrzak to read future events. Although Majchrzak did anticipate a favorable Bond ruling, he was foreclosed to file his claim before the expiration of the



statute of limitations.

Majchrzak's claim squares within the "unique circumstances" of the Ripeness Doctrine and the "extraordinary circumstances" of the Equitable Tolling Doctrine. The Eighth Circuit nor the Supreme Court recognized Majchrzak's individual right and therefore both stood in his way as an external force prior to the ruling in Bond.

"To apply the equitable tolling doctrine in extraordinary circumstances necessarily suggests the doctrines rarity, and the requirement that extraordinary circumstances stood in the way suggests that an external force must cause the untimeliness, rather than mere oversight, miscalculation, or negligence on Majchrzak's part, all which would preclude the application of equitable tolling". [citing Harris, 515 F 3d at 1055]

According to the Ripeness Doctrine, the Equitable Tolling Doctrine, and the unique/extraordinary circumstances that Majchrzak has faced, his particular claim is now rendered fit for decision and ripe for review.

Majchrzak's claim is not jurisdictional and should not be construed as jurisdictional in nature nor context but an As-Applies, Individual Mandate, Tenth Amendment Claim, which involves several companion rights invoking this Court's interpretation under the Hybrid Rights Doctrine challenging the validity of his indictment under 18 U.S.C. 922 [g] [1] as-applies to his specific alleged conduct and whether the U.S. Constitution and Principles of Federalism allow Congress and the federal government to act as they did without yielding to the state of Minnesota and Majchrzak's independent personal rights and interests and the sovereignty and authority of the state of Minnesota and its citizens. The Ninth Amendment allows Majchrzak to assert a free standing Tenth Amendment argument, that as an individual right, he had the right to notice, prior to any indictment, to challenge the federal government taking up the case.

Majchrzak, in an attempt to show the unconstitutionality of his indictment, lays out hurdles that stand in the way of the validity of his indictment and asks the court to reach the merits of these hurdles

under strict scrutiny of the Ninth and Tenth Amendments along with the several companion rights under the Hybrid Rights Doctrine. Majchrzak's hurdles are as follows:

Majchrzak's Alleged Conduct Doesn't Square Within the Types of Crime <u>Set forth in the United States Long Range Plan for the Federal Courts.</u>

In response to the swelling federal criminal dockets, the Judicial Conference of the United States urged in it's long range plan that "criminal jurisdiction should be assigned to federal courts only to further clearly defined and national interests, leaving the State Courts the responsibility for adjudicating all other matters". See Judicial Conference of the United States, Long Range Plan for Federal Courts [1995] reprinted in F.L.D.49 83 [1995]. To that end, the plan narrowly sets forth five types of crime appropriate for federal prosecution.

1] Offenses against the federal government or its inherent interest;

2] Criminal activity with substantial multi-state or international aspect;

3] Criminal activity involving complex commercial or institutional enterprises most effectively prosecuted using federal resources or expertise;

4] Serious high-level or widespread state or local government corruption;

5] Criminal cases raising highly sensitive issues viewed as more objectively prosecuted in the federal system.

Majchrzak's alleged conduct is not against the federal government or it's inherent interest.

It cannot be said that Majchrzak's alleged conduct involved multi-state or international aspects, in fact, the government never even made a passing mention of a multi-state conspiracy. The Executive Branch would fair no better urging Majchrzak's alleged conduct involved complex commercial or International enterprises. There is no public corruption and finally there are no highly sensitive local issues which required the federal government to step in. Majchrzak's alleged conduct is purely intrastate and should have left for the state of Minnesota to prosecute.

(4)

## THE NECESSARY AND PROPER CLAUSE PROHIBIT CONGESS' AUTHORITY TO ENACT AND THE FEDERAL GOVERNMENT'S POWER TO INDICT AS-APPLIED TO MAJCHRZAK'S ALLEDGED INTRASTATE CONDUCT.

"Activities that substantially affect interstate commerce are not themselves part of interstate commerce, and thus the power to regulate them cannot come from the commerce clause alone. Rather... Congress' regulatory authority over intrastate activities derives from the Necessary and Proper Clause". 125 s.ct. At 2215-16 [Scalia, J., concurring]

The means chosen by the federal government to effectuate a legitimate goal must not only be necessary to the achievement of that goal, but they must also be proper in the sense that they cannot be otherwise inconsistent with the letter and spirit of the Constitution . 125 s. ct. at 2231 [Thomas, J., dissenting]

That being the state of Minnesota houses an arsenal of gun statutes to protect its citizens. 18 U.S.C. 922 [g] [1] as applied to Majchrzak's alleged conduct is neither self-evident nor demonstrated that regulating such conduct is necessary to the interstate gun control scheme. The State of Minnesota enforces their own gun laws and there is no reason to depart or suggest that Minnesota controls are ineffective nor has the government, in this case, demonstrated that the federal statutory scheme will be undermined if Congress cannot exert its power as-applied to Majchrzak's specific conduct.
The Constitution, throughout various articles and clauses, only expressed certain original police powers to the federal government like piracy and counterfeiting. Powers that should inform upon the tenets of federalism, especially when scrutinized under the spectacles of the interpretation amendment; the Ninth, and the separation amendment/ the Tenth.

"The enumerated powers should no be unhinged from the expressed boundaries". U.S. v. Bostic, 168 F,3d 718n 723-24[4th Cir. [1999]

"You will run afoul of both necessary and proper if the commerce clause is used as carte blanch license

(5)

to trample every balance of protections built into the republic".

"The commerce clause is addressing only the 'flow" and "currant", not every incident. <u>A.L.A. Schechter Poultry Corp. v. United States</u>, 295 U.S. 495, This is a clear boundary, discernible, necessary and proper when considered under piracy or counterfeiting or the like, but cannot be constitutional when it upsets the balance of power and ignores individual rights.

Here, Congress has encroached on Minnesota's traditional police powers to define the criminal law and to protect the health, and welfare of its citizens. Congress may not use it's incidental authority to subvert basic principles of federalism and dual sovereignty which requires that Congress' excursion into the traditional domain of the states to be justified. Under the Necessary prong, Congress' and therefore the federal government's means as-applied to Majchrzak's alleged conduct cannot be justified nor warranted under constitutional limitations.

Even if this court found the means to be necessary, something more than mere assertion is required when Congress purports to have power over local activities... "That authority must be used in a manner consistent with the notion of enumerated powers-- a structural principle that is as much a part of the constitution as the Tenth Amendments explicit textual command." 545 U.S. 1 [Thomas, J., and O'Connor, J., dissenting]

"A double security arises as to the rights of the people. The different governments will control each other, at the same time that each will be controlled by itself." The Federalist No. 51 at 323 [James Madison]

"Cases such as Printz v. United States... and New York v. United States... affirm that a law is not proper for carrying into execution the commerce clause... [when [it] violates [a constitutional] principle of state sovereignty." [Scalia, J., concurring] [quoting <u>Printz</u>, 521 U.S. 898, 923-24 [1997] and <u>New York</u>, 505 U.S.144, 166 [1992]

The constitution does not simply protect sovereignty-- it protects another, more fundamental



form of "sovereignty", the liberty of the individual. "Indeed, the protection of state sovereignty is merely an instrumental means for securing individual liberty, [the constitution does not protect the sovereignty of states for the benefit of the state or state governments as abstract political entities, or even for the benefit of the public officials governing the state. "New York, 505 U.S. At 181. Instead, "the constitution divides authority between federal and state governments for the protection of individuals. State sovereignty is not just an end in itself; rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power." "Id. [Citation omitted]

In the above quoted cases, the U.S. Supreme Court makes it very clear that state sovereignty is an instrumental means for the protection of individual rights and interests. Federalism principles, accompanied with Majchrzak's Ninth and Tenth Amendment guarantees, secure that his independent rights and interests cannot be trampled upon without prior notice and an opportunity to vindicate those rights and interests, before Congress and the Federal Government stepped in.

It is impossible for Congress and the Federal Government's actions in this case to be proper under the Necessary and Proper Clause. The Tenth Amendment [state sovereignty] against the backdrop of the Ninth Amendment, secures Majchrzak's right and guarantees as a citizen of Minnesota to prior notice. The fact that there was no pre-commandeering hearing evidences Majchrzak's deprivation of his Tenth Amendment right. Majchrzak was deprived of his Tenth Amendment right to prior notice the moment the Federal Government decided he violated some federal statute and obtained an indictment. Any notion that Majchrzak was free to make a Tenth Amendment challenge once he was indicted misses the point of the Tenth Amendment. There was to have been a hearing, a pre-commandeering hearing as to the federal governments interest towards Majchrzak's alleged conduct. At such hearing, the State of Minnesota would be required to give implied consent and Majchrzak constitutionally guaranteed an opportunity to vindicate his independent personal rights and interests, regardless of the rights of the State of Minnesota which may have come into play. All should have

been weighed of evidentiary value and taken into consideration before the federal government even attempted an indictment.

The fact that a pre-commandeering hearing never took place in order for the State of Minnesota to consent, and the fact that Majchrzak was never given an opportunity to vindicate his own independent personal rights and interests cannot be overcome.  The state of Minnesota is free to afford greater procedural protections to their respective citizens even where the State is applying federal law.  The states narrow the interpretation of the statute and broaden the interpretation of the constitution where the federal courts broaden the statute and narrow the constitution .  See <u>Danforth v. Minnesota,</u> 128 s. ct. 1029 [2008]  Majchrzak was never given an opportunity to show that he was entitled to the constitutional protections afforded him by the State of Minnesota.  The fact that he was afforded a whole extra round of appeals, post-conviction relief and collateral attack under the State of Minnesota was sufficient.

Protecting local republican government from encroachment by the central government is a defining feature of the unique American Constitutional framework.  The "powers delegated... to the federal government are few and defined.  Those which are to remain in the state governments are numerous and indefinite [and] extend to all the objects, which... concern the lives, liberties and properties of the people..."  The Federalist No. 45 at 292-93 [James Madison] [Clinton Rossiter ed., 1961]

If the necessary and proper clause calls for heightened attention to the needs of state sovereignty, then under a framework of constitutional importance, the Necessary and Proper Clause should be interpreted to require respect for  the independent individual liberty interests implicated by this case.  Honestly, one has to ask: what constitutional authority has Congress and the federal government used to overcome/trump the Ninth and Tenth Amendments in this case.

At a minimum, that requires this Court to apply a strong presumption in favor of the most basic protection for disputed liberty interest, that division of authority among competing sovereignties



makes possible.

## MULTIPLE CONNONS OF CONSTITUTION COUNSEL AGAINST CONGRESS' AND THE FEDERAL GOVERNMENT'S ACTION IN THIS CASE.

The "plain statement rule" of <u>Gregory v. Ashcroft,</u> establishes that Congress must speak in unmistakable clear terms when it wishes to displace traditional state regulation, 501 U.S. 452, 460-61 [1991]; see also <u>Medronic Inc. Lohr,</u> 518 U.S. 470, 458 [1996] Congress is presumed not to extend federal regulation to areas that have traditionally fallen under states police powers through "muffled hints" or "obscure grant[s] of authority." <u>Gonzales v.Oregon,</u> 546 U.S. 243, 274-75 [2006] See also <u>FDA v Brown & Williamson Tobacco Co.</u> 529 U.S. 120, 160 [2000]. Indeed, when Congress' intent to displace historical state practice "is doubtful, our federal system demands deference to long -established traditions of state regulation ," <u>BFP v. Resolution Trust Corp.,</u> 511 U.S. 531, 546 [1984]

Thes rules apply with special force in the context of criminal law. As the Supreme Court has emphasized, courts should "not be so quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction." <u>United States v. Bass,</u> 404 U.S. 336, 249 [1971]: <u>United States v. Lopez,</u> 514 U.S. n.3 [1995] [Quoting <u>United States v. Enmons,</u> 410 U.S. 396 411-12 [1973] Unless "Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal state balance" in prosecution of crimes. <u>Id.</u> [Quoting <u>Bass,</u> U.S. At 349] See also <u>Rewis v United States,</u> 401 U.S. 808, 812 [1971]

Lastly, because statutes should be interpreted consistent with their overall "objective and policy," courts should avoid interpretations that are "inconsistent with common sense" and that "would operate unjustly, or lead to absurd results." <u>Heydenfeldt v. Daney Gold & Mining Co.</u> 93 U.S. 634, 638. When a "choice has to be made between two readings of what conduct has made a crime, "before a court chooses" the alternative, to require that Congress should have spoken in language that is clear and definite. <u>Jones,</u> 529 U.S. At 858. The rule of Lenity requires that any ambiguities in a criminal

(9)

statute be interpreted in the defendant's favor.

These bedrock principles reinforce each other. There is no language in 18 U.S.C. 922 [g] [1] invoking the commerce clause. The Tenth Amendment must act as a circuit-breaker protecting Majchrzak fro unwarned and unwarranted intrusions by the federal government armed with criminal statutes that delegate their meaning to complete the legislative process absent a hint of guidance. These federal crimes are written without intelligible principles to guide their use.

## CONGRESS' PRESUMPTION AND THE FEDERAL GOVERNMENT'S ACTION VIOLATE, DEPRIVE AND STIGMATIZE SEVERAL OF MAJCHRZAK'S COMPANION FUNDAMENTAL RIGHTS GUARANTEED BY THE CONSTITUTION

Majchrzak's As-Applies, Individual Mandate, Tenth Amendment Claim involves companion rights that invoke this Courts interpretation under the Hybrid Rights Doctrine in conjunction with the Doctrine of Abstention. Majchrzak insists that strict scrutiny must apply. The Ninth Amendment allows Majchrzak to assert a Free Standing Tenth Amendment Claim which violates his fundamental rights as a whole, not just the Tenth Amendment, but the Fourth, Fifth, Sixth and Thirteenth Amendments collectively and the stigmatization of his Fourteenth Amendment.

The Fourth Amendment guarantees Majchrzak absolute right to be free from unreasonable seizure. "[T]he Fourth Amendment protects people, not places." Katz, 389 U.S. At 351. Here, the federal Government intruded upon Majchrzak's individual/personal rights and to be left alone at the expense of Congress' presumption that it can seize private citizens rights under the guise of federal criminal statutes in contradiction of the U.S. Constitution and Principles of Federalism.

The Fifth Amendment guarantees Majchrzak's absolute right not to be deprived of life, liberty or property without Due Process of Law. Here the statutes involved are not within the limits nor out boundaries of the legislative functions authority and resulted in an unwarned and therefore


unwarranted invasion by the legislature of the Judicial function. Under Congress' presumption, the Federal Government assumed legitimate authority to indict Majchrzak without permitting him a defense to rebut the presumption. Under the Doctrine of Abstention it is appropriate for the federal system to "exercise a wise discretion", and restrain itself because of "scrupulous regard for the rightful independence of the state government's" and its citizens.

The Sixth Amendment guarantees Majchrzak's absolute right to be tried in the State and district wherein the crime [alleged conduct] shall have been committed, which district shall have been ascertained by law. Majchrzak's alleged conduct originated from the Duluth Police Task Force, located in St. Louis County, Minnesota. Majchrzak's indictment and trial should have been left for the State of Minnesota to decide.

The question of federalism pivoted on the balances between centralization of local offenses and the people retaining their checks and balances regionally. The incorporation and all the arguments of concern over the Bill of Rights indicated that the people retained the majority of their rights to govern themselves.

The Thirteenth Amendment guarantees Majchrzak's absolute right not to be held under indentured servitude created by way of legal process. Here, Congress' presumption facilitated the federal government in indicting and holding Majchrzak under the use of Legal Coercion, invalid indictment/law and indentured servitude to the federal legal process.

Majchrzak's alleged conduct took place in St. Louis County, Minnesota where under the States legal process he is afforded greater procedural protection, a broader interpretation of the Constitution , faces a maximum sentence one-third in length of the federal court, is entitled double the Appellate Review, twice the recourse under Collateral Attack and Post-conviction Relief, and if convicted, confinement with the State if Minnesota providing close family and community ties and facilitating his appearance at any emergency/funeral of a close family member, ect.

He Fourteenth Amendment guarantees Majchrzak equal protection of the law. In this instance,



the Fourteenth Amendment which engages the Fourth, Fifth and Sixth Amendments as a collective of one state of being not a independent rights to be manipulated with the vascilations of public opinion.

Majchrzak's Fourteenth Amendment rights have been stigmatized. Majchrzak was to have been Constitutionally afforded a pre-commandeering hearing to vindicate his independent personal rights and interests, regardless of the rights of the State of Minnesota, which may have come into play and should have all been taken into consideration before the federal government came in and held him subservient to the federal legal process.

Majchrzak's alleged conduct was never meant for federal prosecution and was to have been left for the State of Minnesota where Majchrzak chose to reside and be secure in the proper administrations of the sovereignties.

I declare under the pains of penalty of perjury that the foregoing is true and correct.

Executed this 6 Day of 4   2012

Respectfully Submitted,

*[signature: J. Majchrzak]*

12